| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>*Attorneys for the Debtor*<br>120 Bloomingdale Road<br>White Plains, New York 10605<br>(914) 381-7400<br>Robert L. Rattet, Esq.<br>Jonathan S. Pasternak, Esq. | Hearing Date:  May 3, 2022<br>Hearing Time:  10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| MARIANINA OIL CORP., | Case No.:  20-23070 (RDD) |
| Debtor. | |

---------------------------------------------------------X

**APPLICATION FOR ORDER PURSUANT TO SECTIONS 363(b), (f) and (m) and 365(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING AND APPROVING (1) SALE OF THE DEBTOR'S REAL PROPERTY AND IMPROVEMENTS THEREON TO WHITE PLAINS HOSPITAL MEDICAL CENTER FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTAND GRANTING GOOD FAITH PURCHASER STATUS IN CONNECTION THEREWITH and (2) REJECTION OF UNEXPIRED NONRESIDENTIAL LEASE**

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Marianina Oil Corp., the above captioned debtor and debtor-in-possession (hereinafter referred to as "Debtor"), by its proposed attorneys, Davidoff Hutcher & Citron LLP, as and for its application for an order pursuant to Sections 363(b), (f), (m) and 365(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule(s)") 2002 and 6004 authorizing and approving (1) the sale of the Debtor's real property located at 34 East Post Road, White Plains, New York 10601 (the "Property") to White Plains Hospital Medical Center ("Purchaser") in accordance with the terms of the Purchase And Sale Agreement ("PSA") annexed hereto as Exhibit "A", free and clear of all

liens, claims, encumbrances and interests of any kind and granting good faith purchaser status to Purchaser in connection therewith and (2) the rejection of the Debtor's nonresidential commercial lease with Gunks Holdings Corp., together with other related relief, respectfully represents as follows:

### Jurisdiction

1.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" for the Southern District of New York, dated July 10, 1984 (Ward, C.J.). Venue of these proceedings and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).

### Background

2.  On September 23, 2020 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property and the management of its business affairs as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

3.  No Official Committee of Unsecured Creditors has been appointed. No trustee or examiner has been appointed.

4.  The Debtor in the business of owning commercially zoned real property located at 34 East Post Road White Plains, New York 10601 (the "Property").

5.  The Property was historically operated by predecessor owners as well as tenants of the Debtor as a gasoline and repair station but has been inactive and unused for the last several years.

6.  The Debtor acquired the Property from Northville Industries, successor owner to BP Products North America Inc. ("BP"), in approximately 1985. Unbeknownst to the Debtor at the time, the Property was environmentally contaminated.

7.  After discovering the contamination, the Debtor demanded remediation and/or remuneration from BP, which resulted in a settlement between the parties wherein BP paid the Debtor $50,000 and in consideration therefor the Debtor indemnified BP from future claims related to the Property.

8.  In or about 1994, the Debtor remediated the Property and the NYS Department of Environmental Conservation ("DEC") issued closure documentation. At that point, the Debtor assumed the Property was now clean and fully remediated.

9.  The Debtor thereafter leased out the gas station to third parties until 2018.

10. However, in 2016-2017 White Plains Housing Authority ("WPHA"), the owner of adjacent property, claimed that its property had been contaminated by, inter alia, the Debtor and in 2017 commenced an action in the Southern District of New York encaptioned *White Plains Housing Authority v. BP Products North America, Inc. Et Al.*, Index No. 17-cv-6250-NSR-JCM (the "District Court Action") initially against only BP but ultimately added the Debtor to the action.

11. As a result of the District Court Action, BP has asserted an indemnification claim against the Debtor.

12. In addition, in 2017 the DEC commenced a new administrative proceeding against the Debtor, resulting initially in a consent order which DEC claimed the Debtor had not fully complied with. However, the administrative proceeding has been recently settled, resulting in the entry into an amended Consent Order governing, inter alia, the cleanup of the Property.

See Exhibit "B" annexed hereto.

13.     Attached to the Consent Order as Exhibit "C" hereto is a lengthy Remedial Action Work Plan that details the parameters and actions for achieving remediation of the affected areas.

14.     Notwithstanding the amended Consent Order, WPHA is still pursuing the Debtor in the District Court Action, seeking injunctive relief from the Debtor regarding the Debtor's alleged obligations to clean up the alleged spill onto WPHA's property.

15.     Prior to the Chapter 11 case, in response to (a) the DEC administrative proceeding and (b) being impled into the District Court Action, the Debtor undertook to further remediate the Property. Initially it contracted MRO Pump and Tank of Nyack, New York and obtained work permits from the City of White Plains.

16.     However, prior to commencing the additional remediation, DEC, for reasons still unclear to the Debtor, caused the City of White Plains to issue a stop work order which remains in place to date.

17.     Accordingly, the Debtor, despite its intentions to remediate, was not previously able (or permitted) to remediate the Property.

18.     In 2019, the Debtor, anticipating being able to complete the required additional remediation, entered into a lease (the "Lease") with Gunks Holdings Corp. ("Gunks"), pursuant to which Gunks agreed to effectuate the lease and use and occupy the Property subject to and conditioned upon the completion of the environmental remediation. A copy of the Lease is annexed hereto as Exhibit "D".

19.     Since the Debtor had been unable to complete the remediation, the Lease has not yet been effectuated; notwithstanding, the Debtor believes the Lease constitutes an unexpired

4

executory contract within the meaning of Section 365 of the Bankruptcy Code.

20. WPHA, in the District Court Action, seeks, inter alia, to compel the Debtor to remediate WPHA's property due to alleged contamination from the Debtor's Property.

21. The Debtor has attempted to resolve with WPHA the injunctive litigation before the District Court; however, the parties have been unable to completely "bridge the gap".

22. The Debtor was hopeful that by entering into an amended Consent Order with the DEC that the cleanup standards required by the DEC would be satisfactory to WPHA. Unfortunately, the parties have yet to resolve their differences.

23. Notwithstanding, the Debtor believes that the best way to try and effectuate an overall cleanup and resolve the District Court Action is by obtaining a purchaser who would be willing to undertake the cleanup in a manner that would ultimately satisfy both the DEC amended Consent Order and the WPHA. Indeed, the DEC itself recognized this, and stated in both the Consent Order and Remedial Action Work Plan that it was contemplated that a buyer, like White Plains Hospital or the City of White Plains Urban Renewal Agency, would purchase the property, as those entities had expressed an interest in causing the construction of a parking garage on the site. As such, the Remedial Action Work Plan contains, as an option for the cleanup, parameters for remediation if that remediation were to be done in conjunction with construction of a parking garage. The sale would also generate proceeds to be put towards the remediation.

24. During 2020 and 2021, the Debtor was in negotiations to sell the Property to White Plains Urban Renewal Agency in connection with the proposed expansion and improvement of White Plains Hospital, close in proximity to the Property, made an initial offer to purchase the Property in lieu of commencing of an eminent domain action against the Debtor.

5

However, those negotiations did not ultimately result in a meeting of the minds.

25. In late 2021, the Debtor received interest directly from White Plains Hospital Medical Center which has a strategic interest in the Property due to its proximity to the White Plains Hospital and the Purchaser's need for additional parking for the hospital.

26. These negotiations resulted in the parties entering into a Purchase And Sale Agreement governing both the cleanup and sale of the Property.

<u>Offer to Purchase from White Plains Hospital Medical Center</u>

27. After arms' length negotiation between respective parties, the Purchaser and the Debtor entered into the PSA, a copy of which is annexed hereto as Exhibit "A".

28. The material terms contained in the PSA are:

   a. Purchase Price - $1,600,000, all cash;

   b. Purchaser to assume environmental clean-up and remediation of Property;

   c. $1,250,000 of the Purchase Price shall be escrowed at closing to be used for such remediation and clean-up, with unused portion returned to Seller's estate;

   d. Property to be delivered free and clear of all liens, claims, encumbrances and interests of any kind, including the Lease;

   e. Purchaser to indemnify the Debtor in connection with the Purchaser's undertaking of the cleanup; and

   f. Purchaser shall close within no more than 30 days of Bankruptcy Court approval.

## Relief Requested and the Legal Basis Therefore

29. Debtor submits this Application for authority to (a) sell the Property pursuant to the terms and provisions of the PSA, free and clear of all liens, claims and encumbrances and (b) reject the Lease in connection therewith, pursuant to Sections 363(b),(f) and (m) and 365(b) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

30. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, as follows:

> "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate…"

31. The PSA contemplates the sale be a private sale, i.e., not subject to higher and better offers.

32. Under General Order M-383, the moving party must demonstrate extraordinary circumstances justifying, inter alia, a private sale.

33. In addition, Bankruptcy Rule 6004 specifically addresses the procedures required for a private sale, as contemplated herein and provides as follows:

> (f) Conduct of sale not in the ordinary course of business
>   (1) Public or private sale
>       All sales not in the ordinary course of business may be by private sale or by public auction.

34. "When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*. 147 B.R. 650 (S.D.N.Y. 1992).

35. The Debtor believes that the sale to Purchaser pursuant to a private sale is a sound exercise of the Debtor's business judgment and is clearly in the best interests, of the

Debtor and its estate, as well as the environment. First and foremost, Purchaser is willing to assume the Debtor's responsibility for the cleanup and to indemnify the Debtor in connection with same. Second, there is a public interest in seeing the Property sold to the Purchaser, which Property will be improved, developed and used for the betterment of the White Plains community in connection with having better access to and parking for White Plains Hospital. The sale will ensure the DEC's Consent Order and Remedial Action Work Plan is both funded and carried out by a responsible party.

36. In addition, the Purchase Price likely exceeds the current fair market value of the Property, especially given the environmental condition of the Property, and the Debtor believes the Purchase price equals or exceeds what the Debtor would be awarded in an eminent domain proceeding, especially after incurrence of costs and legal fees to be incurred in the prosecution of such action.

37. Accordingly, it is in the best interests of the Debtor and its creditors shall be well served with the proposed sale since it will result in a 100% distribution to all administrative, secured and priority creditors as well as a significant distribution to the Debtor's unsecured creditors, with a possible return even to equity.

38. This Court has approved private sales where the debtor or trustee has demonstrated the sale is within the reasonable judgment of such estate representative. *See In re Dewey & LeBeouf LLP*, 2012 WL 5386276 at 4-5 (Bankr. S.D.N.Y. 2012); This Court has also approved private sales where the purchaser is in a uniquely favorable position to acquire the subject property or asset. *See In re MF Global Inc.*, 535 B.R. 596, 606-07 (Bankr. S.D.N.Y. 2015). This Court has further ruled that sale need not be the result of "public" sale to be approved. See *In re Cooper*, 592 B.R. 469, 480 (S.D.N.Y. 2018).

39. Purchaser has been represented by separate outside counsel from the outset of its negotiations with the Debtor and has no connection or relationship with the Debtor or any of its officers, directors, shareholders or principals. The transaction proposed herein is therefore completely "arms length" in nature.

40. In light of the foregoing, the Debtor submits that the private sale of the Property is reasonable and in the best interests of the Debtor and the public at large.

## REQUIREMENTS FOR PRE-CONFIRMATION SALE

41. The Debtor has not yet determined the best course of action with respect to completing the chapter 11 process; to confirm a plan of reorganization or seek the approval of the Court to dismiss the case. However, it is in the best interest of the estate to obtain immediate approval of the PSA so as to comply with the closing deadline thereunder.

42. It is well settled that a sale of a debtor's assets may take place prior to the filing and confirmation of a plan of reorganization, if supported by the sound business judgment of the debtor's management. *See, generally, In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *Official Comm. Of Unsecured Creditors of LTV Aerospace and Defense Co. v. LTV Corporation (In re Chateaugay Corp.)*, 973 F.2d 141, 143-144 (2d Cir. 1992); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

43. This Court has specifically approved sales outside of a plan of reorganization if there is a good business reason for doing so and such sale is in the best interest of creditors. *See In re Saint Vincent's Catholic Medical Centers of New York*, 2010 Bankr. LEXIS 6196 (Bankr. S.D.N.Y. 2010); *In re Cornell Indus.*, 2010 Bankr. LEXIS 3212 (Bankr. S.D.N.Y. 2010); *In re Boston Generating, LLC*, 440 B.R. 302 (Bankr. S.D.N.Y. 2010). As set forth above, both

good business reason (Purchaser's eminent domain claim) and sound business judgment (maximum value of the Property based on current condition) exists herein for the sale of the Property to Purchaser. This proposed sale will yield sufficient funds to make distribution to all of the Debtor's creditors as well as yield a possible return to equity. The Debtor believes that the proposed purchase price is the highest and best offer and that the estate cannot benefit by conducting an auction, assuming it was legally permissible given the eminent domain posture of the Purchaser. In addition, the Debtor and its estate will avoid the time delay, cost, expense and risk of an eminent domain proceeding.

44.     Based upon the foregoing, it is respectfully submitted that sound business judgment exists for a pre-confirmation sale of the Property on the terms and conditions set forth in the PSA.

## SALE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

45.     Section 363(f) of the Bankruptcy Code provides that a debtor in possession may sell property free and clear of liens, claims and encumbrances with any such encumbrances attaching to the net proceeds of the sale, if one of the following conditions is satisfied:

(1)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)     the lienholder or claimholder consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     the lienholder or claimholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

10

<u>See</u> 11 U.S.C. §363(f).

46. There are no known mortgage or judgment liens on the Property.

47. Accordingly, Section 363(f) is satisfied to the extent applicable.

**The Property Must be Sold Free and**
**Clear of The Leasehold Interest and Claim**

48. The Debtor seeks an Order of this Court rendering the sale of the Property free and clear of the Lease, pursuant to Section 363(f)(4) of the Bankruptcy Code.

49. It is well settled that a property may be sold, pursuant to Section 363(f) of the Bankruptcy Code, free and clear of "any interest," which interest can include the possessory interest of a lessee. *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537 (7th Cir. 2003); See also *Cheslocl-Bakker & Assoc. v. Downtown Athletic Club of NYC, Inc. (In re Downtown Athletic Club of NYC, Inc.),* 2000 WL 744126 (Bankr. S.D.N.Y. 2000).

50. The Debtor submits it has satisfied the requirements for a sale "free and clear" of the leasehold interest pursuant to Section 364(f)(5) of the Bankruptcy Code, in that the tenant will be entitled to assert a rejection claim arising out of the termination of its interest under both Section 363(f) and 365(b) as sought hereunder.

51. It is a condition to closing that the Property be delivered free and clear of, inter alia, the Lease and all interests and rights thereunder.

52. Based upon the foregoing, the Debtor hereby seeks an Order approving the sale of the Property free and clear of any and all such Lease related interests.

**Request for Rejection of The Lease As Ancillary To Sale**

53. As a condition of and ancillary to the sale requested herein, the Debtor requests that the Court authorize the rejection of the Lease pursuant to Section 365(b) of the

Bankruptcy Code.

54. The Debtor, as statutory trustee, has exercised its sound business judgment in determining that the Lease has no or inconsequential value to the Debtor or its estate especially in light of the inactive status of the Lease and the Debtor's inability to perform under the Lease, which requires that the Debtor first remediate the Property, for which the Debtor has no funds absent the proposed sale to Purchaser herein.

55. As set forth above, the PSA is subject to termination, i.e., rejection, of the Lease as a material and absolute condition to purchaser's obligation to close on the proposed sale.

56. It is therefore in the best interest of the Debtor and its estate that the Court authorize the rejection of the Lease in connection with and ancillary to the sale proposed herein.

## **NOTICE PROVISIONS**

57. Bankruptcy Rule 6004 states, in part, as follows:

(a) <u>Notice of Proposed Use, Sale or Lease of Property.</u> Notice of a proposed use, sale or lease of property, other than in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i) and (k)...

58. This Application is being served in accordance with the applicable provisions of Federal Rule of Bankruptcy Procedure 2002 on (a) all of the Debtor's creditors; (b) all parties filing Notices of Appearance in these proceedings, and (c) the Office of the United States Trustee, so as to provide at least twenty (20) days' notice of the relief requested, thereby satisfying Federal Rule of Bankruptcy Procedure 2002(a)(2) and (k). Additionally, the Debtor respectfully submits that the descriptions and notices provided by this Application and exhibits hereto provide adequate notice of the terms and conditions of the proposed sale, thereby satisfying Federal Rule of Bankruptcy Procedure 2002(c)(1). Finally, no committee has been

appointed herein, and therefore Federal Rule of Bankruptcy Procedure 2002(i) is not applicable.

It is respectfully submitted that this notice constitutes good and sufficient service hereof.

## GOOD FAITH PURCHASER STATUS

59. Section 363(m) of the Bankruptcy Code provides as follows:

(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

60. The Debtor respectfully requests that the Court enter an order granting Purchaser "good faith purchaser" status pursuant to Section 363(m) of the Bankruptcy Code.

61. As set forth hereinabove, Purchaser has negotiated, by and through its counsel, and entered into the PSA in good faith and at arms' length with the Debtor. Purchaser is a third party unrelated to the Debtor, is not an "insider" of the Debtor within the meaning of Section 101(31) of the Bankruptcy Code, and is not controlled by, or acting on behalf of, and insider of the Debtor or the Debtor itself.

62. The Debtor submits that Purchaser has taken part in the transaction contemplated hereby in a manner consistent with granting it "good faith purchaser" status, and the protections concomitant with such status.

63. A proposed Order granting the Application is annexed hereto as Exhibit "E".

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order: (1) authorizing and approving the sale of the Property to Purchaser, free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. Sections 363(b) and (f) in accordance with the PSA; (2) granting Purchaser good faith purchaser status pursuant to Section 363(m) of the Code and (3) authorizing the rejection of the Lease, together with such other and further relief as is just under the circumstances, for all of which no previous request has been made to this or any other Court.

Dated:  White Plains, New York
            March 28, 2022

                                   DAVIDOFF HUTCHER & CITRON LLP
                                   *Attorneys for the Debtor*
                                   120 Bloomingdale Road
                                   White Plains, New York 10605
                                   (914) 381-7400


                                   By: */s/ Jonathan S. Pasternak*
                                        Jonathan S. Pasternak